*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. O. BEY, Minor.

UNPUBLISHED
March 2, 2023

No. 362066
Wayne Circuit Court
Family Division
LC No. 2021-001011-NA

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating his parental rights to his daughter, EOB, under MCL 712A.19b(3)(b)(*i*) and (j). Under MCL 712A.19a(2), because there are no aggravating circumstances, petitioner, the Department of Health and Human Services, was required to make reasonable efforts to reunify respondent with EOB. Petitioner did not do so. Instead, the primary "service" provided to respondent was a suggestion from a caseworker that respondent should seek mental-health treatment on his own. In light of petitioner's failure to make reasonable efforts to reunify respondent and EOB, we reverse and remand for further proceedings.

## I. BASIC FACTS

Respondent and EOB's mother divorced in October 2018. Pursuant to their judgment of divorce, EOB's mother had sole physical custody of EOB, respondent and EOB's mother shared joint legal custody, and respondent had supervised visitation every other weekend at EOB's paternal grandmother's house.[1] At one point, EOB became distressed while at the grandmother's house. Her mother decided to put her in therapy based upon EOB's comments that if she told her mother something her mother would be hurt. Subsequently, in August 2021, EOB's mother saw EOB lying on a bed and "rubbing" her vagina. When asked what she was doing, EOB—who was six years old at the time—stated that she did not know. When asked where she learned to touch

---

[1] The visits were supervised because in 2017 respondent attempted to commit suicide while EOB was present. The record reflects that respondent does not continue to have suicidal ideation.

herself, she indicated that respondent had showed her. EOB's mother scheduled a medical examination and called the police.

During a Kids Talk interview, EOB disclosed that when she was five years old respondent touched "her girl" with one finger over her underwear while she was at her grandmother's house. She described "her girl" as where "pee" comes from. EOB said that respondent told her not to tell anybody and that he told her that she could do it to herself. After that incident, she began touching "her girl" "a lot."

In October 2021, petitioner filed a petition seeking termination of respondent's parental rights. Following a preliminary hearing, the court authorized the petition. The court ordered supervised visitation, but stated that it would not begin until after the pretrial hearing. Thereafter, at the pretrial hearing, a caseworker recommended that visitation remain suspended unless recommended by EOB's therapist because EOB was having nightmares and exhibiting trauma-based behaviors. The court agreed and suspended parenting time pending a recommendation from EOB's therapist.

On March 1, 2022, following a Tender Years' hearing,[2] the court admitted as substantive evidence EOB's statements during her Kids' Talk interview. The court then held a combined adjudication trial/termination hearing. At that hearing, respondent denied sexually abusing EOB. He also presented evidence that his divorce from EOB's mother was because he had cheated on her with another woman and that, since he had a child with the other woman, EOB's mother's relationship with him had further deteriorated. He argued that EOB's mother was alienating him from EOB and suggested that the allegations were the product of EOB's mother's negative influence.

At the end of the trial/hearing, respondent conceded that the evidence was sufficient to establish jurisdiction under MCL 712A.2(b), but argued that petitioner had not proved that there were statutory grounds to terminate his parental rights under MCL 712A.19b(3). Respondent contended that the evidence showed that there was a need for a "serious Treatment Plan." The trial court found that respondent had touched EOB's vagina over her underwear when she was five years old and that the contact was sexual abuse under MCL 712A.19b(3)(b)(*i*). Based upon that finding, the court found that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and MCL 712A.19b(3)(j). The court set the matter for a best-interests hearing and continued its order suspending parenting time pending a recommendation by EOB's therapist. The court also ordered respondent and the child to be evaluated at the Clinic for Child Study.

The best-interests hearing was held on May 11, 2022. EOB's mother testified to behavioral changes in EOB following her disclosure of the sexual abuse, including that she was now timid and was worried more about her mother being absent from her. In addition, a caseworker testified that when the case started, respondent attended a family team meeting. She stated that during that meeting, she suggested that respondent should seek therapy, but she clarified that she only

---

[2] See MCR 3.972(C)(2)(a).

informed him that he could find a therapist by calling the number on the back of his insurance card. Respondent was not provided with referrals for any services. The caseworker opined that there were no services available for someone in respondent's situation.

The trial court also admitted into evidence the clinician report prepared by the Clinic for Child Study. According to the report, EOB reported that she sometimes wanted to see respondent, but that she was afraid to see him again "because he might do the same thing." As it relates to respondent, the report identified several areas of concern, including respondent's parenting abilities, housing status, mental-health issues, substance use, and domestic violence. The report stated that respondent disclosed that he attempted suicide seven times, with the last time occurring in 2017. He explained that he had previously been diagnosed with major depression and anxiety. He had received mental-health treatment, including medication, but he was not currently taking any medication. Respondent also reported that he used marijuana and alcohol,[3] that he was homeless, and that he was unemployed. He denied sexually abusing his daughter. The report suggested that, in light of respondent's problems, termination of his parental rights would be in EOB's best interests. However, the report also indicated that a caseworker assigned to respondent's case had reported that no services had been provided to respondent because he had not been "adjudicated."

Following the best-interests hearing, the trial court found that termination of respondent's parental rights was in EOB's best interests. Further, the court found that reasonable efforts had been made to prevent EOB's removal from respondent's care because there was a family team meeting, a Kids Talk interview, therapy was provided for EOB, and respondent was "encouraged to participate in therapy." The court found that "the main thing" that petitioner did was to encourage respondent to "engage in mental health services," but that he did not do so. The court noted that, given respondent's mental-health history, he should have not needed a caseworker to tell him that he needed to engage in mental-health services. The court found that "offering [respondent] a case service plan" would "cause more harm" to EOB, and the court expressly stated that it had "no reason to believe that if he was offered a case service plan that anything would be different." Accordingly, the court determined that—notwithstanding that no case service plan had been offered and although there were no aggravating circumstances so as to justify the denial of reasonable efforts—termination of respondent's parental right was in EOB's best interests.

## II. REASONABLE EFFORTS

## A. STANDARD OF REVIEW

Respondent argues that termination of his parental rights was premature because petitioner did not prepare a case service plan for him. This Court reviews for clear error a trial court's finding that petitioner make reasonable efforts to reunify the respondent with his or her child. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 3.

---

[3] Although the report indicated that respondent used marijuana and alcohol, there does not appear to be any indication that respondent was *abusing* those substances.

## B. ANALYSIS

Absent aggravated circumstances not present in this case, "[r]easonable efforts to reunify the child and family must be made in *all* cases . . . ." MCL 712A.19a(2) (emphasis added); see also *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "Reasonable efforts must include 'a service plan outlining the steps that both [the Department] and the parent will take to rectify the issues that led to court involvement and to achieve reunification.' " *In re Taylor-Jones*, 509 Mich 935, 935 (2022), quoting *In re Hicks*, 500 Mich 79, 85-86; 893 NW2d 637 (2017) (alteration in original).[4]  See also MCL 712A.18f(2) and (3).

In this case, petitioner did not provide respondent with a case service plan outlining the steps that it and respondent would take to rectify the issues that led to court involvement and to achieve reunification. Nor did it make any reasonable efforts to reunify him with his child. Indeed, despite being aware that respondent had mental-health issues—including prior suicide attempts— petitioner did not refer respondent for a psychological evaluation or mental-health counseling. Rather, it encouraged him to seek such services on his own, and then used his failure to seek services on his own to argue that termination of his parental rights was in the child's best interests. Despite knowing that respondent was unemployed and homeless, no services were offered to rectify those conditions. At the best-interests hearing, the caseworker justified the lack of services by speculating that no services were available for someone in respondent's position. Yet, she did not explain why respondent would be unable to benefit from services, which arguably could have included referrals for mental-health treatment, housing and employment assistance, and parenting classes. Instead, she speculated that because there was evidence that respondent sexually abused his child he was, essentially, beyond rehabilitation so no services could ever benefit him. Although the caseworker might not have believed any services would be effective, the legislature determined that petitioner is required to make reasonable efforts to reunify parents in respondent's position with their children. See MCL 712A.19a(2). That is, even if petitioner itself believes that such services will ultimately be futile, it must nevertheless make the statutorily mandated reasonable efforts to achieve reunification.

We conclude that the trial court clearly erred by finding that a case services plan was not necessary because it would not have "made any difference." Our Legislature made the determination that reasonable efforts to achieve reunification must be made in all cases except those involving enumerated aggravating circumstances. Those aggravating circumstances are not present in this case, and so the trial court erred by excusing petitioner from making reasonable efforts. Moreover, to the extent that the court found that petitioner, in fact, made reasonable efforts by "encouraging" respondent to seek therapy on his own, the trial court clearly erred. See *In re Taylor-Jones*, 509 Mich at 935 (2022) (holding that the trial court erred by finding that "the mental

---

[4] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

health services that [the respondent] sought and received on her own amounted to reasonable efforts by the Department.").

### III. CONCLUSION

In conclusion, because there are no aggravating circumstances in this case, petitioner was required to make reasonable efforts to reunify EOB with respondent. See MCL 712A.19a(2). As part of the required reasonable efforts, petitioner had to create a case services plan "outlining the steps that both it and [respondent] will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks*, 500 Mich at 85-86. It did not do so. The trial court clearly erred by excusing petitioner from its statutory obligation to make reasonable efforts. Reversal and remand for further proceedings is, therefore, required. On remand, petitioner must make reasonable efforts to reunify respondent with EOB, including by creating a case service plan outlining the steps he must take to rectify the issues that led to court involvement and to achieve reunification.[5]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[5] In light of our determination, we do not address whether the trial court erred by finding statutory grounds to terminate respondent's parental rights and that termination of respondent's parental rights was in EOB's best interests.